**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-00430-NYW-STV

DENNIS J. DUPRAY, as Beneficial Owner and Managing Partner of Tracbeam, LLC, and
TRACBEAM, LLC,

      Plaintiffs,

v.

OXFORD INSURANCE COMPANY TN LLC, and
SERIES PROTECTED CELL 1,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on Defendants' Oxford Insurance Company TN LLC ("Oxford") and Series Protected Cell 1's ("SPC 1" and, collectively with Oxford, "Defendants") Motion to Dismiss Amended Complaint or, in the Alternative, Transfer Venue ("Motion to Dismiss" or "Motion"). [Doc. 21, filed May 23, 2022]. The Court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and corresponding briefing, the entire case file, and the applicable case law, the Court respectfully **GRANTS** the Motion to Dismiss for the reasons stated herein.

**BACKGROUND**

**I.    Factual Background**

The following facts are drawn from the Amended Complaint and Jury Demand ("Amended Complaint"), [Doc. 11], unless otherwise indicated, and are taken as true for the purposes of the instant Motion. This action relates to an insurance policy—specifically, an "Active Net Loss Policy," "captive insurance policy number 43-18" (the "Policy")—that Defendants issued to

Plaintiff Dennis J. Dupray ("Dr. Dupray" or "Plaintiff").  [*Id.* at ¶ 1]; *see also* [Doc. 21-2 at 57–95 (the Policy)].[1]  Dr. Dupray, an inventor, has invented numerous "telecommunication products, systems and/or methods" related to location-tracking through the use of signals from cellphone towers, GPS, Wi-Fi networks, and other methods.  [*Id.* at ¶ 2].  Dr. Dupray assigned many of his inventions to his company, TracBeam, LLC ("TracBeam" and, collectively with Dr. Dupray, "Plaintiffs"), and TracBeam, in turn, obtained patents from the United States Patent and Trademark Office ("USPTO") for the inventions.  [*Id.*].  Dr. Dupray is a citizen of Colorado and TracBeam is headquartered in Colorado.  [*Id.* at ¶ 25].

Between 2011 and 2018, TracBeam—through various attorneys and law firms, including California-based Dovel & Luner ("D&L")—prosecuted patent infringement actions resulting in average net annual revenues of more than $2 million.  [*Id.* at ¶¶ 5–7].  D&L also defended challenges to the validity of TracBeam's patents in multiple *inter partes* review ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB").  [*Id.* at ¶¶ 8–9].

In 2014, TracBeam "sought out a captive insurance policy to obtain a measure of protection in the event that changes to venue rules and the newly created IPR process made further patent infringement litigation less profitable."  [*Id.* at ¶ 12].[2]  Dr. Dupray then worked with Defendants "to design an insurance policy to meet Plaintiffs' needs," [*id.* at ¶ 13], and Plaintiffs ultimately

---

[1] Plaintiffs did not submit a copy of the Policy with the Amended Complaint, but Defendants provided a copy with their Motion.  *See* [Doc. 21-2].

[2] "Captive insurance" is defined as "1. Insurance that provides coverage for the group or business that established it.  2. Insurance that a subsidiary provides to its parent company, usu[ally] so that the parent company can deduct the premiums set aside as loss reserves."  *Insurance*, Black's Law Dictionary (11th ed. 2019); *see also Compton v. Safeway, Inc.*, 169 P.3d 135, 137 (Colo. 2007) ("Safeway insures itself through a captive insurance company.  In other words, Safeway is not insured by an independent insurance company.  Instead, it owns the company that insures its risks. In all other respects, however, a captive insurance company, such as the one owned by Safeway, functions like a traditional insurance company.  For example, it collects premiums from the insured and investigates liability claims made by third parties against the insured." (citations omitted)).

purchased the Policy from Defendants, [*id.* at ¶ 15].[3]  The Policy provided coverage in the event that Plaintiffs' "Key Supplier" terminated its contracts with Plaintiffs as a result of "the adoption or promulgation of" any laws, regulations, or ordinances affecting the Key Supplier's "business and resulting in increased costs or operating expenses, reduction in the Key Supplier's business production capacity, or the Key Supplier's withdrawal of a product or service from the market." [*Id.* (emphases omitted)]; *see also* [Doc. 21-2 at 78].

In 2019, D&L terminated its representation of Plaintiffs due to "increased costs resulting from the IPR process, as well as recent venue changes" related to the United States Supreme Court's decision in *TC Heartland v. Kraft Foods Group Brands*, 137 S. Ct. 1514 (2017).  [*Id.* at ¶¶ 18–19].  Thereafter, Plaintiffs submitted a claim for benefits under the Policy, which Defendants subsequently denied.  [*Id.* at ¶¶ 20–22].  Plaintiffs allege that, given the Supreme Court's 2017 decision, coverage under the Policy exists for the loss of D&L's services on the basis that "the IPR process was the result of the promulgation of federal law."  [*Id.* at ¶ 21].  Accordingly, Plaintiffs seek damages resulting from Defendants' denial of their claim "regarding 'Loss of a Key Supplier' for Tracbeam."  [*Id.* at ¶ 24].  Relevant here, the Policy contains a forum-selection clause which provides that:

> [a]ny suit or action brought to enforce this Policy or any rights granted pursuant to this Policy may be brought only in courts located within the *State of Tennessee*. Company and Insured hereby agree that such courts will have venue and exclusive subject matter and personal jurisdiction. . . .

[Doc. 21-2 at 90 (original emphases omitted) (italics added)].

---

[3] As explained by Plaintiffs, Defendant SPC 1 "is a series of Oxford Insurance Co.  It is not a separate entity, and an individual's membership in a series of Oxford Insurance Co. conveys no membership interest in Oxford Insurance Co.  Consequently, Series Protected Cell 1 shares its membership with Oxford Insurance Co., and is a citizen of Maryland."  [Doc. 11 at ¶ 32].

## II.    Procedural Background

Plaintiffs initiated this action on February 17, 2022 by filing a Complaint and Jury Demand. [Doc. 1].  Plaintiffs filed the operative Amended Complaint on March 8, 2022, wherein they assert two causes of action against Defendants: breach of contract (Count I), and statutory unreasonable delay and denial of payment under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (Count II).  [Doc. 11 at ¶¶ 144–57].  Plaintiffs invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). [*Id.* at ¶ 34].  As to venue, Plaintiffs acknowledge that the forum-selection clause in the Policy specifies a Tennessee forum.  [*Id.* at ¶ 35].  However, they assert that venue is nevertheless "proper in this Court because the Colorado Supreme Court has expressly held that a forum selection clause in a private contract cannot divest a Colorado court of either personal or subject matter jurisdiction and, as a result, a forum selection clause will not be enforced if the underlying contract is against Colorado public policy."  [*Id.* at ¶ 36 (brackets omitted)].  Plaintiffs also allege that "Defendants violated Colorado law and public policy" on the grounds that they are not "authorized to engage in the business of insurance in Colorado."  [*Id.* at ¶ 38]; *see also* [*id.* at ¶ 37].

On May 23, 2022, Defendants filed the instant Motion seeking dismissal of the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, respectively, or, in the alternative, transfer of this action to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). [Doc. 21].  Plaintiffs responded to the Motion on July 13, 2022, [Doc. 34], and Defendants replied on July 27, 2022, [Doc. 41].  The same day, the Parties jointly moved to stay discovery pending resolution of the Motion to Dismiss, which the Court subsequently granted.  [Doc. 42; Doc. 45]. The Motion is thus ripe for disposition.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "[P]laintiffs bear the burden of establishing personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). When, as here, a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff[s] need only make a *prima facie* showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff[s] may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant[s]." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering this question, a court must accept all well-pleaded facts as true and must resolve any factual disputes in favor of the plaintiffs. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A court may exercise general jurisdiction or specific personal jurisdiction depending on the defendant's degree of relation to the court's jurisdiction and the relation between defendant's contact with the forum and the conduct underlying the litigation. *See AST Sports*, 514 F.3d at 1058.

### II. Federal Rule of Civil Procedure 12(b)(3)

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows for dismissal of a plaintiff's complaint "only when venue is improper in the forum in which a case was brought." *Weathers v. Circle K Stores, Inc.*, 434 F. Supp. 3d 1195, 1205 (D.N.M. 2020) (ellipsis, brackets, and internal quotation marks omitted)). In considering a Rule 12(b)(3) motion to dismiss, the Court may examine facts outside of the complaint but must accept all well-pleaded allegations as true if

uncontroverted by the defendant's evidence and must draw all reasonable inferences and resolve all factual ambiguities in the plaintiff's favor. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012). Once a defendant challenges venue, the burden lies with the plaintiff to demonstrate the appropriateness of her chosen forum—a choice rarely disturbed by the Court unless it is clear that the facts giving rise to the lawsuit have no material relation or connection to the chosen forum. *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019).

## III.   Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides in relevant part that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

For a typical motion under § 1404(a), the Supreme Court and Tenth Circuit have instructed that courts should resolve the motion by considering a number of public- and private-interest factors:

> Factors relevant for a § 1404(a) transfer include (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would

serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"
*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (quoting
§ 1404(a)).

This analysis changes, however, when a motion seeking transfer is based on a "an
applicable, mandatory, valid, and enforceable forum-selection clause." *Carr v. Wells*, No. 20-cv-
03319-PAB-SKC, 2022 WL 910953, at *4 (D. Colo. Mar. 28, 2022) (citing *Atl. Marine*, 571 U.S.
at 62); *cf. Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 (D.C. Cir. June 18, 2019) (discussing
analysis that applies when a motion to dismiss for *forum non conveniens* is based on an "applicable,
mandatory, valid, and enforceable" forum-selection clause). "When the parties have agreed to a
valid forum-selection clause, a district court should ordinarily transfer the case to the forum
specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the
convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 62
(footnote omitted). Thus, the existence of a valid forum-selection clause requires courts to modify
the § 1404(a) analysis in three ways. First, "the plaintiff's choice of forum merits no weight" and
"the plaintiff bears the burden of establishing that transfer to the forum for which the parties
bargained is unwarranted." *Id.* at 63. Second, the court resolving the transfer motion may consider
only public-interest factors and not the parties' private interests, because "[w]hen parties agree to
a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient
or less convenient for themselves or their witnesses, or for their pursuit of litigation." *Id.* at 64.
Third, the "transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*
The practical effect of these modifications to the transfer analysis is that "forum-selection clauses
[will] control except in unusual cases." *Id.*

## ANALYSIS

### I.     Preliminary Issues

Defendants move to dismiss this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue.  [Doc. 21].  Alternatively, Defendants request that the Court transfer this action to the United States District Court for the Middle District of Tennessee ("Middle District of Tennessee") pursuant to 28 U.S.C. § 1404(a) based on the forum-selection clause.  [*Id.*].

"[T]here is no mandatory sequencing of jurisdictional issues," *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation and internal quotation marks omitted), and a court "may consider venue prior to considering personal jurisdiction," *Wardell v. Am. Dairy Goat Assn.*, No. 21-cv-01186-PAB-NRN, 2022 WL 375577, at *3 (D. Colo. Feb. 8, 2022), *report and recommendation adopted*, 2022 WL 596276 (D. Colo. Feb. 28, 2022).  As the Supreme Court has explained:

> The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.  On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties.  Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue.

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (internal citations omitted); *see also Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 n.3 (10th Cir. 2001) ("The district court had the authority either to dismiss or transfer the case for improper venue or lack of personal jurisdiction." (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)); *see also* 28 U.S.C. § 1404 (authorizing the transfer of a case to another district court in which the case would be properly brought for the convenience of parties and witnesses or in the interests of justice); *id.*

§ 1406 (authorizing a district court to dismiss a case for improper venue or transfer a case to another district court in which the case would be properly brought in the interest of justice).

The Court finds it prudent in this matter to consider venue before personal jurisdiction. Specifically, in light of the Court's conclusion below that the existence of a valid forum-selection clause in the Policy justifies a transfer to the Middle District of Tennessee, "it is more efficient to begin by simply transferring the litigation to the [proper forum], rather than dismissing it and effectively requiring Plaintiff[s] to re-file" in another forum. *Aspen Corps., Inc. v. Gorman*, No. 18-cv-01325-CMA-SKC, 2019 WL 1281211, at *3 (D. Colo. Mar. 20, 2019) ("As a prudential matter, it is the Court's practice to seek efficient outcomes. The Court therefore finds it appropriate to pretermit the matter of personal jurisdiction because it is clear that venue is improper."); *cf. Lawson v. Glob. Payments Inc.*, No. 18-cv-03360-PAB-SKC, 2019 WL 4412271, at *1 (D. Colo. Sept. 16, 2019) ("[A] forum-selection clause does not render venue in a court wrong or improper within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3). Instead, the proper mechanism for enforcing a forum-selection clause is a motion to transfer under 28 U.S.C. § 1404(a)." (internal quotation marks and citations omitted)). Accordingly, the Court begins and ends it analysis by addressing the Parties' arguments as to whether transfer is warranted pursuant to § 1404(a).

## II.   Application

### A.   Validity and Enforceability of the Forum-Selection Clause

Before applying the modified *Atlantic Marine* analysis discussed above, the Court "must determine whether a valid and enforceable forum-selection clause applies to the [P]arties' dispute." *Parker Powersports Inc. v. Textron Specialized Vehicles Inc.*, No. 21-cv-00766-PAB-STV, 2022 WL 796788, at *2 (D. Colo. Mar. 16, 2022); *see also Lewis v. Google, Inc.*, No. 19-cv-02387-

WJM-KLM, 2019 WL 10749715, at *2 (D. Colo. Dec. 31, 2019) ("The Court's analysis—whether to apply the standard § 1404(a) factors and burdens, or to apply the factors and burdens required under *Atlantic Marine*—turns on whether the Forum Selection Clause is valid.").  The forum-selection clause at issue here states:

> Forum.  Any suit or action brought to enforce this **Policy** or any rights granted pursuant to this **Policy** may be brought only in courts located within the State of Tennessee.  **Company** and **Insured** hereby agree that such courts will have venue and exclusive subject matter and personal jurisdiction, and consent to service of process by registered mail, return receipt requested, or by any other manner provided by law, and agree that the party to this **Policy** prevailing in such suit or action will be entitled to all costs of such suit or action, including reasonable attorney's fees.

[Doc. 21-2 at 90 (emphases in original)][4];  *see also* [Doc. 1 at ¶ 35; Doc. 21 at 7; Doc. 34 at 6–7].

The Court finds that the forum-selection clause is valid.  Notably, although Plaintiffs acknowledge that "a court must determine whether a valid and enforceable forum selection applies to the parties' dispute," [Doc. 34 at 17 (quotation marks and citation omitted)], Plaintiffs do not expressly address the validity requirement and, instead, argue that the forum-selection clause "violates Colorado's public policy, and is unenforceable."  [*Id.*].  Nevertheless,  Plaintiffs do not claim that the forum-selection clause "was based on fraudulent inducement or misrepresentation, nor make any specific allegations of fraud."  *Bowers v. Tension Int'l, Inc.*, No. 15-cv-02734-WJM-KLM, 2016 WL 3181312, at *3 (D. Colo. June 8, 2016); *see also Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1162 (Colo. App. 2006) ("However, the specific question raised here— whether  general  contractual  fraud  not  specifically  relating  to  the  procurement  of  the  forum

---

[4] "When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."  *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011).

selection clause is sufficient to invalidate the clause was—not [sic] addressed.").  Thus, given that

Plaintiffs have failed to cast doubt as to the validity of the forum-selection clause, this Court's

"analysis presupposes a contractually valid forum-selection clause."  *Atl. Marine*, 571 U.S. at 62

n.5; *see also Lewis*, 2019 WL 10749715, at *2.[5]

    In addition, the Parties' briefs implicitly presume that the forum-selection clause applies to

Plaintiffs' claims, *see generally* [Doc. 21; Doc. 34; Doc. 41], and the Court finds that it does.  *See*

_____

[5] The Policy also contains a "Choice of Law" clause, which states that "[t]his Policy and all questions with respect to the . . . construction, enforcement, and interpretation hereof, shall be governed by the laws of the State of Tennessee, without regard to conflict of laws provisions." [Doc. 21-2 at 92 (emphasis omitted)].  The Parties do not address this clause as it relates to the validity or enforceability of the forum-selection clause.  Rather, they rely exclusively on Colorado law in making their arguments.  *See, e.g.*, [Doc. 21 at 8; Doc. 34 at 17–18].  Therefore, the Court will do the same here.

Nevertheless, the Court notes that "the Supreme Court [has] not answer[ed] whether state or federal law governs the validity of a forum-selection clause."  *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 n.4 (9th Cir. 2022).  Moreover, courts have not drawn a clear distinction between "validity" and "enforceability" when analyzing forum-selection clauses, including "whether federal law governs issues of 'validity' in addition to those of 'enforceability' of forum-selection clauses, to the extent there is such a distinction."  *Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1095 (D. Colo. 2021) (citing *Barnett v. DynCorp Intl., L.L.C.*, 831 F.3d 296, 302 (5th Cir. 2016)) (noting that "the *Stewart* and *Atlantic Marine* analyses assume[d] that the [forum-selection] clause was validly entered into" and "some courts have struggled with determining the breadth of the holdings" in those cases; and finding that the choice-of-law clause mattered in that case because the defendant argued that the forum-selection clause was invalid under California law); *see also Barnett*, 831 F.3d at 302 ("[W]e do not appear to have drawn [t]his distinction between validity and enforceability, instead seeming to treat those words as synonyms in the forum-selection clause context.  Even in diversity cases, we have often framed our analysis of such clauses by quoting [the] instruction [from *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)] that forum-selection clauses 'are prima facie *valid* and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'"); *Wylie v. Kerzner Int'l Bahamas Ltd.*, 706 F. App'x 577, 580 (11th Cir. 2017) ("It seems to us, then, that the analytical framework (and substantive law) governing the *forum non conveniens* inquiry in this diversity case depends on whether the *validity* of a forum-selection clause is distinct from, and antecedent to, its *enforceability*, or whether the validity of such a clause is just part of the federal law of enforcement, as developed in *Bremen* and expounded upon through *Atlantic Marine*.  As the Fifth Circuit recently recognized in *Barnett* . . . , the Supreme Court has not answered this question.  And neither have we.").

[Doc. 21-2 at 90 ("*Any* suit or action brought to *enforce this **Policy*** or *any rights* granted pursuant to this **Policy** may be brought only in courts located within the State of Tennessee." (italics added))].   The Parties also do not contest that the language in the forum-selection clause is mandatory.  *See* [Doc. 21 at 7; Doc. 34 at 17]; *compare* [Doc. 21-2 at 90 ("Any suit or action . . . may be brought *only* in courts located within the State of Tennessee." (emphasis added))] *with K & V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) ("Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate *only* in the designated forum." (emphasis added)).

As mentioned above, Plaintiffs primarily dispute the enforceability of the forum-selection clause.  Specifically, Plaintiffs argue that the forum-selection clause is unenforceable on the basis that it "violates Colorado's public policy."  [Doc. 34 at 17].

A forum-selection clause "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) ("We will enforce a mandatory forum selection clause unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." (citation, internal quotation marks, and brackets omitted)).  "Whether a contract violates public policy is determined based on the particular facts of the case," and Colorado courts look to "various sources to discern public policy," including "statutory law and the common law of the various states."  *Rademacher v. Becker*, 374 P.3d 499, 500 (Colo. App. 2015) (citations omitted).  However, the "strong public policy" exception is a narrow one, and the Court will not disturb the "presumptive validity" of a

mandatory forum-selection clause absent a "strong showing" that it should set the clause aside. *Parker Powersports*, 2022 WL 796788, at *2 (citing *Bremen*, 407 U.S. at 15); *see Bowen Eng'g Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015) ("[F]ederal courts will give effect to a forum selection clause if the state policy against such clauses simply reflects the continued 'provincial attitude regarding the fairness of other tribunals.'" (quoting *Bremen*, 407 U.S. at 12)). Plaintiffs fail to make such a showing here.

In support of their argument that the forum-selection clause violates Colorado public policy, Plaintiffs rely exclusively upon one section of the Colorado Regulation of Unauthorized Insurance Act ("CRUIA"), Colo. Rev. Stat. § 10-3-902. [Doc. 34 at 18]. That section states in relevant part:

> The general assembly declares that it is a subject of concern that many residents of this state hold policies of insurance issued by persons and insurers not authorized to do insurance business in this state, thus presenting to such residents the often insuperable obstacle of asserting their legal rights under such policies in forums foreign to them under laws and rules of practice with which they are not familiar and are deprived of the benefit of Colorado laws regulating insurance. The general assembly declares that it is also concerned with the protection of residents of this state against acts by persons and insurers not authorized to do an insurance business in this state by the maintenance of fair and honest insurance markets; . . . by protecting authorized persons and insurers, which are subject to strict regulation, from unfair competition by unauthorized persons and insurers; and by protecting against the evasion of the insurance regulatory laws of this state. In furtherance of such state interest, the general assembly [herein] exercises its power to protect residents of this state and to define what constitutes transacting insurance business in this state.

Colo. Rev. Stat. § 10-3-902. Plaintiffs argue that this provision demonstrates that "Colorado's public policy *requires* insurers to be subject to the courts of this state," and the Colorado legislature "expressed its concern that Colorado insureds could be forced to assert their rights against unauthorized insurers in distant forums without the benefit of the protections offered" under Colorado law. [Doc. 34 at 18 (emphasis added)]. Thus, according to Plaintiffs, the forum-selection

clause violates Colorado public policy by "(1) exposing those the General Assembly intended to protect (2) to the harms it wished to avoid (3) at the hands of those it wished to regulate." [*Id.*].

The Court is respectfully unpersuaded by Plaintiffs' argument for several reasons. As an initial matter, the CRUIA does not mention forum-selection clauses at all, let alone purport to invalidate such clauses. And Plaintiffs likewise fail to cite any authority to support their argument that the CRUIA establishes Colorado public policy regarding the use of forum-selection clauses in insurance contracts. *See* [*id.*]; *cf. Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1179, 1181 (11th Cir. 2019) (invalidating a forum selection clause where the public policy interest behind a statute was preventing the "us[e of] forum selection clauses to avoid litigation in Georgia courts," based in part on a Georgia statute providing that "[a] payday lender shall not . . . nor shall the loan contract designate a court for the resolution of disputes concerning the contract other than a court of competent jurisdiction in and for the county in which the borrow resides or the loan officer is located").

In *Nauert v. Nava Leisure USA, Inc.*, No. 99-1073, 211 F.3d 1278, 2000 WL 381509 (10th Cir. Apr. 14, 2000) (unpublished table decision), the Tenth Circuit addressed a related public policy argument under the CRUIA. There, the plaintiffs argued that enforcement of a forum-selection clause would violate public policy, relying upon Colo. Rev. Stat. §§ 10-3-902 and -903. *Nauert*, 2000 WL 381509, at *1. Relevant here, in determining that those sections of the CRUIA did not apply to the plaintiffs' case, the court explained that "Section 902 indicates[] [that] the Colorado legislature apparently was concerned with the fact that Colorado citizens held policies of insurance issued by insurers who were not authorized to do business in Colorado. That is not our case." *Id.* at *4. Neither is it our case here. Indeed, despite Plaintiffs' allegations regarding whether Defendants are or were authorized to engage in the business of insurance in Colorado,

*see, e.g.*, [Doc. 11 at ¶¶ 36–38, 59–65], they do not assert a cause of action against Defendants under the CRUIA, or for engaging in the unauthorized business of insurance generally.[6] Rather, they assert claims for breach of contract and statutory unreasonable delay and denial of benefits. [*Id.* at ¶¶ 144–57]; *see also* [Doc. 34 at 15 ("The only issues in this case will involve coverage; the reasonableness of Defendants' conduct; and damages. . . .  This is a straightforward claim for benefits owed under an insurance policy.")].

The Court also finds the opinion in *Bowers v. Tension International, Inc.* instructive here. In that case, which arose pursuant to the Fair Labor Standards Act and Colorado Wage Act, the plaintiff sought to invalidate a Missouri forum-selection clause in a sub-contracting agreement. 2016 WL 3181312, at *1–4.  The plaintiff argued, *inter alia*, that the Colorado Wage Act barred enforcement of the forum-selection clause on the basis that "the text of the Act [gave] him the right to seek relief in Colorado court and that the Act more generally embodie[d] a strong public policy of allowing workers to seek relief in Colorado courts." *Id.* at *4.  In making his argument, the plaintiff relied upon *Morris v. Towers Financial Corporation*, 916 P.2d 678 (Colo. App. 1996), a Colorado Wage Act case in which the Colorado Court of Appeals declined to enforce an out-of-state forum-selection clause on the grounds that enforcement "'would contravene the strong public policy embodied in the Colorado Wage Claim Act.'" *Id.* (quoting *Morris*, 916 P.2d at 679).  The *Morris* court, in turn, relied on language in the Wage Act permitting employees to file suit in "any court having jurisdiction over the parties," and concluded that "[t]he plain language of the statute establishes that the General Assembly intended that a remedy be available for Colorado employees . . . in the Colorado courts." *Morris*, 916 P.2d at 679.  The *Bowers* court declined to follow the

_____

[6] In so stating, the Court does not presume that Colorado law provides a private right of action for engaging in the unauthorized business of insurance.

*Morris* court's holding, deciding instead to uphold the Missouri forum-selection clause in the sub-

contracting agreement.  *Bowers*, 2016 WL 3181312, at *4.  Significantly, the court explained that:

> [it was] not bound by *Morris*, which was decided over twenty years ago, long
> before *Atlantic Marine*.  But the Court *is* bound by *Atlantic Marine*, including the
> holding that "a valid forum selection clause [should be] given controlling weight in
> all but the most exceptional cases."   To the extent *Morris* would make non-
> enforcement of forum selection clauses routine rather than exceptional (*i.e.*,
> unenforceable in all cases alleging violation of the Colorado Wage Act), that
> holding cannot be reconciled with *Atlantic Marine* and must yield to the decision
> of the Supreme Court.

*Id.* (citation omitted) (brackets and emphasis in original).  In addition, after observing that "*Morris*

was decided without much analysis," the court explained that it was "not persuaded by the

conclusory statement in *Morris* that the statute's 'plain language' allowing plaintiffs to file suit in

'any court having jurisdiction' implicitly guarantees plaintiffs the right to litigate in Colorado."

*Id.*  (citation and quotation omitted).

Although the *Bowers* court ultimately rejected the plaintiff's arguments and found the

forum-selection clause enforceable, it is notable that the plaintiff in that case at least referenced

Colorado case law on a related issue to support his position.  Here, on the other hand, Plaintiffs

fail to cite any authority regarding the public policy they argue is espoused under the CRUIA, let

alone that the CRUIA reflects "Colorado's public policy [that] *requires* insurers to be subject to

the courts of this state," as Plaintiffs claim in their Response.[7]  [Doc. 34 at 18 (emphasis added)].

---

[7] Likewise, in the cases cited by Plaintiffs, none of the courts invalidated a forum-selection clause
on public policy grounds.  *See* [Doc. 34 at 17–18].  For instance, Plaintiffs cite *Bremen*, [*id.* at 17],
but in that case the Supreme Court held that a London forum-selection clause was enforceable
where the agreement arose from "an arm's-length negotiation by experienced and sophisticated
businessmen."  *Bremen*, 407 U.S. at 12.  And in *Parker Powersports*, *see* [Doc. 34 at 17], the court
upheld a Georgia forum-selection clause despite the plaintiffs' public-policy arguments based on
a Colorado statute authorizing venue in Colorado.  *Parker Powersports*, 2022 WL 796788, at *2–
5.  Plaintiffs fail to explain how these or any of the other cases they cite support their position that
the Court should not enforce the forum-selection clause in the Policy.

And similar to the *Bowers* court, this Court is not bound by the CRUIA—specifically Colo. Rev. Stat. § 10-3-902—which was enacted 50 years ago, and since which time no Colorado courts have cited that provision as a source of public policy regarding forum-selection clauses or venue for suit in insurance cases. *See* H.B. 1491, 1967 Leg., Reg. Sess. (Colo. 1967), http://hdl.handle.net/10974/session:4052 (last visited, Dec. 13, 2022).[8]  Moreover, Plaintiffs fail to articulate any prejudice from the lack of a Colorado forum, which also weighs against application of the narrow *Bremen* exception under the circumstances of this case. *See Parker Powersports*, 2022 WL 796788, at *3.

In sum, Plaintiffs have failed to cast any doubt on the validity or enforceability of the forum-selection clause, and, therefore, the *Atlantic Marine* analysis applies. *See Lewis*, 2019 WL 10749715, at *3; *see also Rademacher*, 374 P.3d at 500 (noting that the general rule prohibiting enforcement a contract that violates public policy "does not exist for the benefit of the party seeking to avoid contractual obligations, but instead serves to protect the public from contracts that are detrimental to the public good").

## B.   Application of *Atlantic Marine* Analysis

It is Plaintiffs' "burden to demonstrate that the public-interest factors of the § 1404(a) balancing test weigh in [their] favor." *Lewis*, 2019 WL 10749715, at *3 (citing *Atl. Marine*, 571

---

[8] Even if the CRUIA expressly authorized venue in Colorado, such authorization would "not necessarily make the forum selection clause unenforceable." *Parker Powersports*, 2022 WL 796788, at *3.  Indeed, under *Bremen*, "Plaintiffs still must show that enforcement would 'contravene a strong public policy of the forum in which the suit is brought.'" *Id.* (quoting *Bremen*, 407 U.S. at 15).  And "[t]he requirement of a strong public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in the state." *Id.*; *see also Bremen*, 407 U.S. at 9 ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.").

U.S. at 63–64).  "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."  *Atl. Marine*, 571 U.S. at 63 n.6 (citation, brackets, and internal quotation marks omitted).

At the outset, the Court notes that Plaintiffs hang their argument on the premise that *Defendants* have not sufficiently demonstrated the inconvenience of litigating this matter in this District.  *See, e.g.*, [Doc. 34 at 19 ("Ultimately, the party seeking to transfer a case bears the burden of showing that the existing forum is not convenient, and a plaintiff's choice of forum should rarely be disturbed. . . .  Fortunately, Defendants identify only three reasons why Colorado is an inconvenient forum.")].  Again, however, the forum-selection clause in the Policy is valid and, therefore, it is *Plaintiffs* who bear the burden to show why the public-interest factors weigh against transfer.  *See, e.g.*, *Atl. Marine*, 571 U.S. at 67 ("The District Court improperly placed the burden on Atlantic Marine to prove that transfer to the parties' contractually preselected forum was appropriate.  As the party acting in violation of the forum-selection clause, J-Crew must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.").

In any event, Plaintiffs argue that "Colorado's interest in deciding this controversy greatly outweighs Tennessee's" because "Colorado has a strong interest in protecting its residents from unauthorized insurers who avoid Colorado's comprehensive regulatory system."  [Doc. 34 at 19]; *see also* [*id.* at 20 ("Colorado's public policy against allowing unauthorized insurers to sell a highly regulated product to Colorado residents significantly outweighs the public interest against forum shopping.")].  However, the Court has already addressed Plaintiffs' failure to establish any Colorado public policy that would disturb the presumptive validity of a forum-selection clause at issue in this case.  Likewise, Plaintiffs' conclusory assertions that "Defendants violated Colorado

18

law for years" and "Colorado's interest in regulating the business of insurance greatly outweighs concerns about forum shopping," [*id.* at 20], fare no better. *See Parker Powersports*, 2022 WL 796788, at *3 ("The requirement of a strong public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in the state.").

Plaintiffs also argue that the relative congestion of this Court and the Middle District of Tennessee "weighs against transfer." [Doc. 34 at 19]. Specifically, in the Motion, Defendants provide a table (below), based on information derived from the United States District Courts' Federal Court Management Statistics for the 12-month period ending on December 31, 2021, to "demonstrate that this Court has a significantly higher caseload (cumulatively and on a per-judgeship bases) and more backlog than the Middle District of Tennessee." [Doc. 21 at 11].

|  | District of Colorado | Middle District of Tennessee |
|---|---|---|
| **Filings** | 4,073 | 1,686 |
| **Cases Pending** | 3,841 | 1,933 |
| **Total Filings Per Judgeship** | 582 | 422 |
| **Civil Filings Per Judgeship** | 495 | 283 |
| **Weighted Filings Per Judgeship** | 599 | 417 |
| **Pending Cases Per Judgeship** | 549 | 483 |
| **Number of Civil Cases Over 3 Years Old** | 173 | 85 |

[*Id.*].[9]  In their Response, Plaintiffs argue that Defendants' table "presents an incomplete picture of the condition of the two courts' dockets" on the basis that Defendants "fail to point out that the

---

[9] The Court has confirmed the accuracy of this information. *See* United States Courts, *Federal Court Management Statistics, U.S. District Courts – Combined Civil and Criminal* (Dec. 31, 2021), *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/12/31-1 (last visited Dec. 13, 2022.)

Middle District of Tennessee has only four Article III judges, two visiting Senior Article III judges, and three magistrate judges," whereas this District "has seven Article III judges, six senior Article III judges, and nine magistrate judges." [Doc. 34 at 19]. However, Plaintiffs do not claim the information in the table is inaccurate, and there is no legitimate dispute that the Middle District of Tennessee is less congested than the District of Colorado. Significantly, Plaintiffs fail to explain how the difference in the number of judges, standing alone, "weighs against transfer." [*Id.*].

To reiterate, "forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. Given Plaintiffs' failure to show why this is an unusual case, transfer to the Middle District of Tennessee is appropriate.[10] *See Lewis*, 2019 WL 10749715, at *3 ("Again, however, the Forum Selection Clause is valid and so it is Plaintiff's burden to show why the *public*-interest factors weigh against transfer. Plaintiff's failure to offer even an alternative argument in this regard means Plaintiff has *per se* failed to satisfy his burden.").

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, Transfer Venue [Doc. 21] is **GRANTED**;

(2)     This case shall be **TRANSFERRED** to the United States District Court for the Middle District of Tennessee; and

---

[10] Although Defendants request that this case be transferred to the Middle District of Tennessee, the forum-selection clause does not specify that suit must be brought in a federal forum. Rather, it states that suit "may be brought only in courts located within the State of Tennessee." [Doc. 21-2 at 90]. Plaintiffs' Response does not take a position on whether they would prefer to litigate in that federal court, or whether they would instead avail themselves of a Tennessee state court. *See* [Doc. 34]. Nevertheless, "[b]ecause Plaintiffs themselves chose a federal forum here," this Court will direct the transfer of the claims to the federal court in the Middle District of Tennessee. *See Oceanside Ten Holdings.com, LLC v. Mktg, Inc.*, No. 17-cv-02984-MSK-KMT, 2018 WL 2277004, at *3 n.1 (D. Colo. May 18, 2018).

(3)     The Clerk of Court shall effectuate such transfer and thereafter close this case.


DATED: December 13, 2022                         BY THE COURT:

_____
Nina Y. Wang
United States District Judge